IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 24, 2018

**FILED**
11/26/2018
Clerk of the
Appellate Courts

## STATE OF TENNESSEE v. CARL THOMAS GROSSE

**Appeal from the Criminal Court for Putnam County**
**Nos. 15-CR-389, 16-CR-578      Gary McKenzie, Judge**

_____

### No. M2017-02202-CCA-R3-CD
_____

Pursuant to a plea agreement, the Appellant, Carl Thomas Grosse, pled guilty to two counts of aggravated burglary and received consecutive sentences of eight years and three years with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court ordered the Appellant to serve his sentences in confinement. In this delayed appeal, the Appellant challenges the trial court's denial of alternative sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and J. ROSS DYER, JJ., joined.

Russell C. Tribble (on appeal) and Edwin Sadler (at guilty plea and sentencing), Cookeville, Tennessee, for the Appellant, Carl Thomas Grosse.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### I.  Factual Background

In July 2015, the Putnam County Grand Jury returned indictment number 2015-CR-389, which charged the Appellant with the aggravated burglary of the habitation of Devon and Peyton Cox on January 17, 2015. Thereafter, in June 2016, the grand jury returned indictment number 2016-CR-578, which charged the Appellant with the aggravated burglary of the habitation of Josh Wicks on October 25, 2015. The

indictment was later amended to name Wesley Pedigo and Lauren Pedigo as additional victims of the second burglary.

On December 16, 2016, the Appellant pled guilty to the foregoing charges. At the guilty plea hearing, the State provided the following factual basis for the plea to the first aggravated burglary:

> Devon and P[e]yton Cox, who were roommates in an apartment, were gone from their apartment on a particular evening and the neighbor heard some activity next door. He was kind of in charge of their apartment while they were away, [he heard] some rustling around in a closet and he knew there was not supposed to be anybody there. So the police were called, [the Appellant] was found inside the house or inside the apartment, and some items had been moved around and disturbed from where they originally were supposed to have been.

As a factual basis for the plea to the second aggravated burglary, the State said:

> [T]he residence of Mr. Josh Wicks, Wesley Pedigo, and Lauren Pedigo was burglarized while they were not at home. Various items were taken, including some guitars, musical equipment.
>
> Mr. Wicks, nosing around town, located one of his guitars at the Cross Roads Music Store here in Cookeville. That happened to have been sold by the [Appellant]. That caused the police to go out to speak with [the Appellant], who was living in Overton County at the time. Detective Shannon Smith went out there. As soon as he walked in the door, he saw another guitar that belonged to Mr. Wicks sitting there in the living room. There [were] also some USB memory sticks that belonged to Ms. Lauren Pedigo there.
>
> They talked to [the Appellant]. He admitted that he had committed the burglary. He indicated that some of the property might be at the Gun Shop Pawn Shop in Overton. There they did find an item that matched the description of one of the items stolen, but it had been sold already, so they weren't able to completely confirm that.

The plea agreement provided that the Appellant would be sentenced to three years as a Range I, standard offender for the first aggravated burglary and to eight years as a Range II, multiple offender for the second aggravated burglary. The aggravated burglaries were Class C felonies. The plea agreement further provided that the three-year sentence would be served consecutively to the eight-year sentence for a total effective sentence of eleven years. Finally, the plea agreement provided that the trial court would determine the manner of service of the sentences.

At the April 3, 2017 sentencing hearing, Charles R. Stiriz with the Tennessee Board of Probation and Parole testified that he prepared the Appellant's presentence report. Stiriz stated that the Appellant had attended school through the ninth grade and that he had obtained a general equivalency diploma (GED). Stiriz said that the only time the Appellant was unemployed was while he was incarcerated.

The State submitted the presentence report as an exhibit. The presentence report reflects that the Appellant had three convictions of casual exchange, two convictions of driving on a revoked license, and one conviction of aggravated burglary, burglary of a building other than a habitation, possession of amphetamine, possession of drug paraphernalia, assault, shoplifting, violating the financial responsibility law, vandalism, and various traffic infractions. The presentence report also reflects that the Appellant violated probation on at least eight occasions.

The State and defense counsel agreed to stipulate that some members of the Appellant's church were present in court to show their support.

The Appellant testified that he was thirty years old, married, and had four biological children and one stepdaughter. His children ranged in age from four years old to twelve years old.

The Appellant acknowledged that he had an extensive criminal history, that he had violated probation on several occasions, and that he had a problem with drugs. He further acknowledged making bad choices to support his addiction, such as committing the instant crimes. He wanted to seek drug treatment and change his life in order to be a better husband and father. He maintained that he "started working on this before I came to jail, but my addiction had . . . control over me . . ." After he was incarcerated, he "set [his] mind" and told his wife he was ready to change. While he was in jail, he completed three Bible-related correspondence courses and continued to take other courses. The Appellant said that if he were granted release, he planned to attend church, do right, and change his life. Additionally, he had been accepted by three in-house rehabilitation programs: Teen Challenge, The Lighthouse, and Sober Living Services.

The Appellant said he had written a letter stating that he had not caused any problems since he entered jail on July 13, 2016, and that he had demonstrated he was willing and able to improve his life. The letter also asked that he be released into a rehabilitation program or probation. Approximately twenty police officers and guards signed the letter at the Appellant's request.

On cross-examination, the Appellant agreed that he had "done very poorly on probation in the past." He acknowledged that he was on parole when he committed the first aggravated burglary. After his parole was revoked, he "flattened" that sentence. He committed the second aggravated burglary while he was released on bond for the first aggravated burglary.

At the conclusion of the proof, the State acknowledged that the Appellant had not used drugs while incarcerated and had taken some courses. The State argued that despite the Appellant's positive attitude, his lengthy history of criminal convictions and multiple violations of probation demonstrated that he was not a good candidate for alternative sentencing.

Defense counsel did not disagree with the State's factual assertions regarding the Appellant's past. Nevertheless, defense counsel contended that the Appellant would have difficulty improving his life after a lengthy incarceration. Defense counsel stated that the Appellant was not seeking full probation but would accept it if the trial court granted it. Instead, defense counsel argued that rehabilitation programs could be successful if the participant wanted to be rehabilitated and asked the court to order the Appellant to enter an in-house rehabilitation program where "[h]e'll be locked down," followed by a term of probation after completion of the program.

The trial court acknowledged that the Appellant had presented himself well in court and that he showed signs of improving his life. However, the Appellant had committed two serious offenses which involved entering people's homes. Additionally, the Appellant had a long criminal history, consisting of three felony convictions and a "multitude" of misdemeanors. The court observed that the Appellant had "violations of probation every time" and that "probation [was] not really an option" for him in the instant case. Accordingly, the trial court ordered the Appellant to serve his sentence in confinement.

The Appellant did not appeal the trial court's ruling at that time. On July 3, 2017, and September 8, 2017, he filed petitions for post-conviction relief in which he alleged that his trial counsel failed to inform him of his right to appeal the trial court's ruling regarding the manner of service of the sentence. The post-conviction court stayed the post-conviction proceedings and granted the Appellant this delayed appeal to challenge the trial court's denial of alternative sentencing.

## II. Analysis

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the Appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the Appellant to demonstrate the impropriety of his sentence(s). See Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The Appellant's individual sentences meet this requirement. Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). In the instant case, the Appellant was convicted of two Class C felonies. He was sentenced as a Range I offender for the first aggravated burglary; accordingly, he is considered to be a favorable candidate for alternative sentencing for that offense. However, he was sentenced as a Range II offender for the second aggravated burglary and is not considered to be a favorable candidate for alternative sentencing for that offense.

The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

On appeal, the Appellant argues that the trial court should have considered mitigating factors (1), that the Appellant's criminal conduct neither caused nor threatened serious bodily injury, and (10) that the Appellant assisted the authorities in locating or recovering property involved in the first aggravated burglary. Tenn. Code Ann. § 40-35-113(1) and (10). He contends that the trial court's refusal to consider any mitigating factors wholly departs from the sentencing act and constitutes an abuse of discretion. The Appellant asserts that based upon his completion of correspondence courses, his acceptance into treatment programs, and the letter of endorsement signed by law enforcement and corrections officers, the trial court should have granted an alternative sentence. The State responds that the trial court did not abuse its discretion by denying alternative sentencing. We agree with the State.

Initially, we note that the trial court stated that it did not "really [have] to consider" the enhancement and mitigating factors because the Appellant's sentence range, length, and consecutive nature were part of the Appellant's negotiated plea agreement. However, the sentencing act provides that consideration of enhancement and mitigating factors are relevant to determinations regarding alternative sentencing. State v. Ring, 56 S.W.3d 577, 584 (Tenn. Crim. App. 2001); State v. Paul Avery Reno, No. M2016-01903-CCA-R3-CD, 2017 WL 3037538, at *14 (Tenn. Crim. App. at Nashville, July 18, 2017); State v. Phillip Serpas, No. E2015-00693-CCA-R3-CD, 2016 WL 369091, at *3 (Tenn. Crim. App. at Knoxville, Jan. 29, 2016); see Tenn. Code Ann. § 40-35-210(b)(5).

Although the trial court did not state specifically that it was considering enhancement and mitigating factors, the record reflects that in determining the manner of service of the sentences, the trial court considered all of the evidence, exhibits, and testimony presented at the guilty plea and sentencing hearings; the presentence report; the risks and needs assessment; the principles of sentencing; the nature and characteristics of the Appellant's criminal conduct; the arguments of counsel; and the Appellant's potential for rehabilitation. The record further reflects that the Appellant did not argue for the

application of any mitigating factors at the sentencing hearing.  See State v. Jennifer Hodges, No. M2016-01057-CCA-R3-CD, 2017 WL 3085434, at *7 (Tenn. Crim. App. at Nashville, July 20, 2017).  In denying alternative sentencing, the trial court found that the Appellant's criminal history was extensive and that the Appellant violated probation on numerous occasions.  Tenn. Code Ann. § 40-35-103(1)(A), (C).  The record amply supports these findings.  Notably, the Appellant acknowledged his extensive criminal history and numerous probation violations during his testimony at the sentencing hearing.  The Appellant further acknowledged that he was on parole at the time he committed the first aggravated burglary and that he was released on bond when he committed the second aggravated burglary.  We conclude that the trial court did not abuse its discretion by denying alternative sentencing.

### III.  Conclusion

The judgments of the trial court are affirmed.

_____
NORMA MCGEE OGLE, JUDGE